383 P.2d 487

**ACME CRANE RENTAL COMPANY, a Partnership, Plaintiff and Respondent,**

**v.**

**IDEAL CEMENT COMPANY, Defendant and Appellant,**

**and**

**Utah Crane & Rigging, Inc., a corporation, Defendants, Intervenors and Appellants.**

**No. 9693.**

Supreme Court of Utah.

July 8, 1963.

---

The rented crane was to be used by Utah on a job for Ideal Cement Company at its plant near Devil's Slide, Utah. In the early morning of February 17, 1960, cracks were noticed in the outrigger boxes of the crane and work was halted for a period of about 12 hours to make the necessary repairs.

Originally Acme brought this action against Ideal to foreclose a mechanic's lien for unpaid crane rental. Utah Crane intervened and assumed responsibility for the defense of the action and any judgment that Acme might recover. Utah Crane counterclaimed seeking a setoff for damages occasioned by the shut-down allegedly caused by Acme's negligence and breach of implied warranty.

Utah Crane appeals from a judgment of the lower court denying its counterclaim and awarding Acme the rent claimed to be due less the costs incurred by Utah Crane in repairing the crane.

The evidence, viewed in the light most favorable to Acme, the prevailing party, discloses that Acme was approached by Utah Crane as to the availability for hire of the 60-ton crane. Acme agreed to rent the machine at the rate of $32.00 per hour, which rate would include the services of an operator and oiler to be furnished by Acme. At this time Acme was advised that it was to be a 24-hour per day job. When the crane was delivered to the job site, one of

---

Warwick C. Lamoreaux, Salt Lake City, for appellants.

James E. Faust, Salt Lake City, for respondent.

CALLISTER, Justice.

On February 13, 1960, plaintiff, Acme, entered into an oral arrangement to lease a 60-ton crane to defendant, Utah Crane.

Acme's partners had an opportunity to observe the nature of the work to be done.

On the night the cracks in the outrigger boxes were discovered, Utah Crane's foreman phoned one of Acme's partners, a Mr. Paulsen, at his home and advised him of the development. Mr. Paulsen stated that in the morning he would call the dealer from whom the crane had been purchased and have the dealer take care of the situation. The foreman then requested permission to make the repairs. Mr. Paulsen agreed to this and also agreed to assume the cost of the repairs.

When the Ideal job was completed, Acme billed Utah the rental of the crane in the sum of $3,342.90. Utah Crane remitted $1,048.39, withholding $2,295.51 which it claimed was due from Acme for the repairs, shut-down time for other cranes, and premium overtime wages necessitated by the shut-down. The lower court denied Utah's claimed offset, except for the cost of repairs in the amount of $825.17, and awarded Acme judgment accordingly.

■ Appellant, Utah Crane, first assails the trial court's finding that Acme was not negligent inasmuch as "said crane was a new crane and that there was no proof of a duty to make an inspection of [the] outrigger boxes before sending crane onto the job of the defendant [Ideal]." The record adequately supports such a finding. There was testimony to the effect that outrigger boxes develop cracks only on very rare occasions, that the very nature of the boxes as an immovable and integral part of the crane's frame argue against their inspection, and that it is the general practice among crane operators not to inspect them. The fact that rust was found in the cracks, indicating they had been in existence for some time, is of no consequence in the absence of a duty to inspect.

Utah Crane argues that because "popping" and "cracking" noises had been heard just before the discovery of the cracks, and there was evidence that these noises had been heard on a prior job, that Acme was on notice of a possible defect and thus under a duty to inspect. However, there was competent evidence, which the court below was entitled to believe, that such noises are incident to the normal operation of the machine.

Utah Crane's next contention is that the lower court erred in failing to find Acme guilty of a breach of implied warranty. That court found, in substance, that the agreement reached via the telephone conversation on the night of the shut-down constituted a new agreement which resulted in an "accord and satisfaction," settling and discharging all existing claims against each

other including the claim for breach of warranty.

 It is difficult for this court to understand how two evidently experienced concerns could enter into such a loose arrangement regarding the lease of an expensive piece of equipment. There was no written lease setting forth the duties and obligations of the parties and, so far as the record discloses, they were not delineated in the oral arrangement. It is true that as a general rule in a bailment for hire a warranty will be implied that the chattel is reasonably fit for the purpose for which it was hired or leased.[1] However, in the instant case we need not concern ourselves with the question as to whether or not there was an implied warranty and, if so, whether a breach thereof would render Acme liable for damages resulting from the shut-down. The agreement entered into over the telephone giving Utah Crane the right to repair the crane limited Acme's liability to only the costs of the repairs. Indeed Mr. Paulsen of Acme testified that if he had been informed that Acme would be held responsible for the costs of the shut-down, he would have "pulled the crane off the job."

Affirmed. Costs to respondent.

HENRIOD, C. J., and McDONOUGH, CROCKETT and WADE, JJ., concur.

1. Reynolds v. American Foundry & Mach. Co., 121 Utah 130, 239 P.2d 209.